United States District Court
Middle District of Florida
Tampa Division

**TERRY LEE SCOTT GREEN,**

    *Plaintiff,*

v.     No. 8:19-cv-1402-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

___

# Order

    Terry Lee Scott Green[1] brings this action under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying her application for disability insurance benefits. Under review is a decision by an Administrative Law Judge ("ALJ") dated June 28, 2018.[2] Tr. 14–31. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 17–26, and the parties' briefs, Docs. 16, 17, and not fully repeated here. Green argues the ALJ erred (1) in rejecting an opinion by Green's treating podiatrist and (2) in failing to consider Green's work history when evaluating her subjective complaints of pain. Doc. 16.

## I.    Background

    Green was born in 1961. Tr. 203. She is a United States Army veteran and processed mail for the United States Postal Service for eighteen years.[3] Tr. 59. She applied for benefits on November 24, 2015, Tr. 106, claiming disability beginning on

___

    [1]Green married in 2017 and changed her last name from Scott to Green. Tr. 57, 315–18.

    [2]Two decisions by the ALJ are in the record—one dated June 27, 2018, Tr. 32–49, and one dated June 28, 2018, Tr. 14–31. The parties and the Court cite the latter opinion.

    [3]Green reported she had worked as a "distribution clerk manual" from 1996 to 2005, and "mail processing clerk (automation)" from 2005 to 2014. Tr. 25, 248.

October 18, 2014, at the age of 53, from diabetes, feet problems, asthma, heart problems, and acid reflux, Tr. 203, 229. She is insured through 2019. Tr. 236.

After failing at the initial and reconsideration levels, Tr. 95–131, Green requested an administrative hearing before the ALJ, Tr. 132–33. The ALJ conducted a hearing in April 2018. Tr. 50–91. Green testified she stopped working because she could no longer stand for eight hours, could not continue to lift, and could no longer walk the distance the job required. Tr. 64.

## II.   ALJ's Decision

The ALJ found Green has severe impairments of asthma, degenerative joint disease of the knees and shoulder, left hip bursitis, heart disease, hypertension, gastrointestinal disorders, skin disorders, disorders of the esophagus, peripheral spine disorder, tendinopathy of the left lower extremity, obesity, and diabetes mellitus. Tr. 19.

The ALJ found Green has non-severe impairments of "plantar fasciitis or other disorders of the foot and hallux valgus." Tr. 20. The ALJ found the impairments non-severe because they were "short-lived, occurred prior to the AODD with no or less than minimal residual limitations, lasted less than 12-months, controlled on medications or caused less than minimal ascribable limitations." Tr. 20.

The ALJ found Green has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment in 20 C.F.R., Part 404, Appendix 1. Tr. 20. The ALJ observed no physician reported findings suggesting otherwise. Tr. 20.

The ALJ found Green has a residual functional capacity[4] ("RFC") to perform light work with additional limitations:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently push and pull with the left lower extremity and right upper extremity. She can occasional[ly] perform the postural activities, but she can never climb ladders, ropes or scaffolds. She can frequently reach overhead with the right upper extremity. She can have no more than occasional exposure to extreme temperatures, humidity, vibrations, pulmonary irritants such as dust, odors, fumes and gases or workplace hazards such as unprotected heights and moving machinery. She requires an option to change posit[i]ons but not at will. Thus, she could change position momentarily between sitting and standing every 30 minutes, if needed. For example, she could if desired, stand and stretch after sitting 30 minutes or sit for 30 minutes after standing for 30 minutes.

Tr. 21.

Considering the RFC and the testimony of a vocational expert, the ALJ found Green can perform her past relevant work as a mail handler. Tr. 25, 250. The ALJ therefore found no disability. Tr. 26.

### III.   Standard of Review

A court's review of an ALJ's decision is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is

---

[4]A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The SSA uses the RFC at step four to decide if a claimant can perform past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. 20 C.F.R. § 404.1545(a)(5). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

not high." *Id*. The Court is without authority to reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## IV. Law and Analysis

### A. *Green's Treating Podiatrist*

The first issue Green raises concerns the ALJ's treatment of an opinion by her treating podiatrist, Joshua Bernard, D.P.M. Tr. 830. Dr. Bernard's opinion is in a letter dated July 6, 2017, and addressed "to whom it may concern":

> This letter is in [sic] behalf of my above patient who is currently applying for disability retirement. This [sic] are my responses to the required medical documentation requirements as requested.
>
> Briefly, her past medical history consists of hypertension, type 2 diabetes, obesity, obstructive sleep apnea syndrome, chronic knee condition, and chronic pain in both feet. [S]he has difficulty walking or standing for any distances. She has pain, tingling and burning in her feet which makes it difficult for her to ambulate. She has been on a permanent reasonable accommodation for her disability is [sic] at work over the past few years. Her condition of peripheral neuropathy combined with her flat feet as well as her body habitus and her diabetes make it very difficult for her to maintain any reasonable work demands without pain. She has been on chronic pain management for these conditions.
>
> Her conditions are permanent and will likely progress and worsen over time. It is my expert opinion that Ms. Scott has chronic and severe and permanent disabilities which qualify her for disability retirement.

Tr. 830.

Addressing Dr. Bernard's opinion, the ALJ stated:

> I recognize that the evidence contained a medical opinion that the claimant was "disabled". Specifically, Joshua Bernard, DPM, submitted correspondence noting that the claimant had pain, tingling and burning sensation in her feet, which made ambulation difficult. He noted that

4

> the claimant was on permanent reasonable accommodation for her disability at work over the past few years. He opined that her peripheral neuropathy with flat feet as well as her body habitus and diabetes made it very difficult for her to maintain work demands without pain. He concluded that the claimant would qualify for disability retirement (Exhibit 11F). However, sections 404.1527 of Regulations No. 4 provides that the medical findings and other evidence must be considered in order to determine if, and to what extent, such opinion is supported thereby. The [ALJ], on behalf of the Commissioner …, is the ultimate arbiter of work capacity for Social Security purposes, in view of specific definitions used therein. That is, the determination of "disability" is reserved to the Commissioner, delegated to me, on the basis of the record as a whole. A physician's opinion or conclusion is not controlling in the absence of supporting evidence such as clinical or laboratory findings or other medically acceptable evidence. While an assertion based on symptoms can be evaluated, it cannot receive the weight of one backed by objective records. In this case, the opinion was contradictory to the record as a whole. As noted, the claimant responded well to medications with few significant pain complaints and numerous consistently unremarkable clinical examination findings. The extreme limitations, little based by other reports, raise questions as to the care with which the opinion was formulated. Perhaps, this individual relied heavily on subjective complaints given the aforementioned exam findings. Ultimately, the evidence failed to substantiate this [sic] claims. Thus, I accord this opinion little weight because it was not consistent with the medical evidence of record.

Tr. 24.

Regardless of its source, the Social Security Administration ("SSA") "will evaluate every medical opinion" it receives.[5] 20 C.F.R. § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and . . . physical or mental restrictions." *Id.* § 404.1527(a)(1). An opinion on an issue that is dispositive of a case,

---

[5]"For claims filed … before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in [§ 404.1520(c)] apply." 20 C.F.R. § 404.1527. Because Green filed her claim for disability insurance benefits before March 27, 2017, the rules in § 404.1527 apply here.

such as whether a claimant is disabled or able to work, is not a medical opinion because it is an opinion on an issue reserved to the Commissioner. *Id.* § 404.1527(d)(1). The SSA "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* § 404.1527(d)(3).

An ALJ must state with particularity the weight given to a medical opinion and the reasons for the weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.*

The SSA generally will give more weight to the medical opinion of a treating source because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(b)(2). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise and substantial evidence supports the good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence does not bolster the opinion, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41.

Unless the SSA gives a treating source's opinion controlling weight, the SSA will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. § 404.1527(c). An ALJ need not explicitly address each factor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

A state-agency medical consultant is highly qualified and an expert "in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The opinion of a

consultant may be entitled to great weight if the evidence supports the opinion. Social Security Ruling ("SSR") 96-6p, 61 Fed. Reg. 34466, 34467–68 (July 2, 1996) (rescinded by SSR 17-2p, effective Mar. 27, 2017).

Here, Green shows no error concerning the ALJ's treatment of Dr. Bernard's opinion. The ALJ stated the weight she was giving the opinion ("little weight") and the reasons for that weight (the Commissioner determines disability and the opinion is inconsistent with the record as a whole, Tr. 24). Those reasons constitute good cause, and substantial evidence supports them.

The first reason (the Commissioner determines disability) is a correct statement of the law, *see* 20 C.F.R. § 404.1527(d)(1), and applied here without error. After describing Green's medical history, Dr. Bernard ultimately opined Green has "chronic and severe and permanent disabilities which qualify her for disability retirement." Tr. 830. Whether Green qualifies for benefits concerns a dispositive issue and is entitled to no special significance. *See* 20 C.F.R. § 404.1527(d)(1).

On the second reason (the opinion is inconsistent with the record as a whole), Dr. Bernard opined Green "has difficulty walking or standing for any distances." Tr. 830. The opinion is inconsistent with evidence showing few significant limitations with many unremarkable clinical examinations, including normal gait, station, and strength, Tr. 22–23, 508, 519, 671, 834–35, 842, 845–46, 849–50, 1066, 1138, 1216, 1635; no mobility limitation noted in July 2017, Tr. 1279; Green's neurologist believed Green could tolerate a gradual reintroduction of standing and walking over time in July 2014, Tr. 338; and Green's primary care provider noted no musculoskeletal problems or functional limitations in August 2017, Tr. 23, 1247.

Dr. Bernard opined Green's peripheral neuropathy, flat feet, body build, and diabetes combine to "make it very difficult for her to maintain any reasonable work demands without pain." Tr. 830. The opinion is inconsistent with records showing that despite early complaints of foot pain following a 2013 surgery, Tr. 332, for the

nearly two years before Dr. Bernard's opinion, Green had few if any consistent pain complaints, her pain was generally relieved with gabapentin, and clinical exam findings were unremarkable, with no significant functional limitations. Tr. 22–24, 426–46, 649, 750, 832, 1414, 1585. And in January 2016, Green reported only intermittent pain and swelling over the last several years, treated with Naproxen and steroid injections, which provided relief for up to a year at a time. Tr. 23, 731.

Dr. Bernard ultimately opined Green "has chronic and severe and permanent disabilities which qualify her for disability retirement." Tr. 830. Dr. Bernard does not provide the definitions he was applying, but with ordinary definitions the opinion is inconsistent with evidence showing a month after Dr. Bernard's opinion, Green's primary care provider stated her diabetes had been in reasonable control since 2015, Tr. 23, 1247; and a few months after Dr. Bernard's opinion, Green's blood pressure was stable, she had no recent chest pain, she had sleep apnea with continuous positive airway pressure use, she had a gastrointestinal issue without esophagitis, and she had diabetes mellitus without complications and was overall doing well, Tr. 24, 1714.

While some records show complaints of more serious pain or other limitations, substantial evidence supports the ALJ's rationale. The Court may not reweigh evidence. *See, e.g.*, *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 865 (11th Cir. 2019) (unpublished) ("This is not to say that the record does not contain evidence supporting Ross's claims for disability, or that there is not an alternative interpretation of the evidence that is more favorable for him. ... [H]owever, there was other sufficient relevant evidence for the ALJ to conclude that Dr. Stewart-Sabin's hearing testimony was inconsistent with her own treatment records[.]").

Green argues the ALJ failed to consider factors pertinent to evaluating Dr. Bernard's opinion, including the nature and length of the treating and examining relationship, his area of specialization, and consistency with the record as a whole.

Doc. 16 at 9–15. Though the ALJ had to consider those factors, she was not required to explicitly address each of them in her decision. *See Lawton*, 431 F. App'x at 833.

Green argues the ALJ erred in assigning more weight to an opinion of the state agency physician—Thomas Renny, D.O.—because Dr. Renny did not examine her, is not a specialist, and did not review the full record—including Dr. Bernard's opinion—before offering his opinion. Doc. 16 at 16–17. Green concedes Dr. Renny's opinion was not necessarily unreasonable at the time made but argues there is "no way of knowing what the consultant would have opined had she [sic] had access to the full record ultimately developed." Doc. 16 at 17.

This argument is unpersuasive. The ALJ acknowledged that Dr. Renny "reviewed all the available evidence" and "the record as a whole continued to support many of these same limitations." Tr. 25. The ALJ properly considered Dr. Renny's opinion with the other evidence in deciding whether Green is disabled. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) ("Moreover, even if the non-examining doctor was unable to review all of Cooper's medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as Cooper's testimony."). As the Commissioner observes, Doc. 17 at 7–8, the opinions of Dr. Renny further undermine Dr. Bernard's opinion and support the ALJ's decision.

Citing SSR 96-2p, Green argues that if an opinion has no right to controlling weight, the ALJ must continue the inquiry to determine whether it can be afforded substantial weight, and in this context perfect consistency is not required. Doc. 16 at 11. She points to records showing decreased range of motion, reports of pain and other symptoms, descriptions of the quality of pain, and continued treatment for pain. Doc. 16 at 12–14. This argument is also unpersuasive. SSR 96-2p states a medical opinion need not be consistent with all other evidence but further states this is true only "as long as there is no other substantial evidence in the case record that contradicts or

9

conflicts with the opinion." SSR 96-2p. Multiple normal or mild examination findings over an extended time are inconsistent with Dr. Bernard's opinion.

Green argues the ALJ relied on gabapentin's effectiveness in controlling her neuropathic foot pain but failed to consider the medication's side effects. Doc. 16 at 15.

In assessing a claimant's RFC, an ALJ must consider the possible side effects of medications, 20 C.F.R. § 404.1529(c)(3)(iv), and develop the record on that subject, *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). *See also* SSR 16-3p[6] ("Important information about symptoms recorded by medical sources and reported in the medical evidence may include, but is not limited to, the following…"[a] longitudinal record of any treatment and its success or failure, including any side effects of medication."); SSR 96-8p ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as: . . . restrictions imposed by the mechanics of treatment (e.g. … side effects of medication)[.]") (emphasis in original).

Green takes several medications, including gabapentin to relieve her foot pain, prescribed by her neurologist, Edmund Grant, M.D. Tr. 336, 1453. The ALJ acknowledged the pain relief gabapentin provides, noting that despite early complaints to Dr. Grant of pain, numbness, and weakness in her left foot and toes, by July 2014, she reported good relief from her foot pain with gabapentin. Tr. 22. Medical records cited by the ALJ show that as early as December 2014 and through 2018, gabapentin was effective in relieving Green's neuropathic pain. Tr. 22, 23, 24, *see* Tr. 444, 586, 841, 849, 1098, 1414. The ALJ concluded, "Therefore, the record continued

---

[6]Effective March 28, 2016, SSR 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ issued her decision on June 8, 2018, Tr. 37, the new SSR applies. *Cf. Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply because ALJ issued decision before SSR's effective date).

to support that despite some early foot complaints, the claimant's symptoms such as neuropathic pain were controlled with medications and she had consistently unremarkable clinical exam findings." Tr. 24.

In December 2015, Green reported in a supplemental questionnaire that gabapentin caused her "occasional drowsiness." Tr. 241. In March and June 2016, Green submitted disability reports listing her medications and side effects and stating that gabapentin "makes me a little drowsy," Tr. 271, and "makes me sleepy," Tr. 282. At the hearing, she and her counsel had the following exchange about the effects of gabapentin:

> ATY [] I think you mentioned some problems with neuropathy. Could you just describe what the neuropathy is like and do you think that's related to the diabetes?
>
> CLMT The neuropathy is painful. I'm on gabapentin. I take it at night before I go to bed because I'm not supposed to take it during the day because I have problems with sleep. I fall asleep after I take the gabapentin so they suggested I take it at night; Dr. Bernard said to – no, Dr. – the doctor suggested I take it at night. It's kind of painful. You don't know when you're going to have, have – you don't know where the pain going to shoot up at so it's constant there.

Tr. 64–65.

Green's argument is unpersuasive. The ALJ considered that Green slept eight hours when using gabapentin and that she "denied having any symptoms the next day when using" gabapentin. Tr. 20. The treatment notes from Green's doctors do not document difficulty staying awake during the day or that Green's foot pain was uncontrolled during the day when they examined her. The medical records indicate that the nightly dose of gabapentin effectively relieves her discomfort. Tr. 841, 845, 849. When asked by her counsel how often she experiences neuropathy, whether daily or if it comes and goes, Green testified, "It's intermittently and it, it hurts, it's no set place, time. It just comes—it comes at its own will." Tr. 65.

Green did not testify, and the medical records do not support, that she is tired or drowsy during the day or that her daily activities are limited because she is too tired or from foot pain, and she fails to show any work-related limitations to account for sleepiness or drowsiness. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) (internal quotation marks omitted) ("Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the ALJ does not err in failing to inquire further into possible side effects.").

Remand to reconsider Dr. Bernard's opinion is unwarranted.

**B.     *Work History***

Green argues the ALJ failed to account for her strong work history. Doc. 16 at 18–21. She acknowledges her work history does not entitle her to enhanced credibility but contends the ALJ had to consider it. Doc. 16 at 20–21.

To determine disability, the SSA considers pain and the extent to which the pain "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Statements about pain alone cannot establish disability. *Id.* § 404.1529(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the pain" and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 404.1529(a), (b).

The finding that an impairment could reasonably be expected to produce the pain does not involve a finding on the intensity, persistence, or functionally limiting effects of the pain. *Id.* § 404.1529(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the pain affects the claimant. *Id.* § 404.1529(a), (c); *see* SSR 16-3p ("Medical sources may offer diagnoses, prognoses, and opinions as well as statements and medical reports about an individual's . . . efforts to work, . . . and

12

other information concerning the intensity, persistence, and limiting effects of an individual's symptoms."). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to pain … can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the pain affects the ability to work. 20 C.F.R. § 404.1529(a).

Factors relevant to pain include: daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain; treatment for the pain other than medication; and measures used to relieve the pain. *Id.* § 404.1529(c)(3). The SSA also considers a claimant's "prior work record." *Id.*; *see* SSR 96-8p ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as: . . . attempts to work[.]") (emphasis in original).

To determine the extent to which pain affects a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the pain; the statements in relation to the objective medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 404.1529(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about pain. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated pain finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoted authority omitted).

Contrary to Green's arguments, the ALJ applied the correct standards in considering her statements, and substantial evidence supports the ALJ's findings

concerning them. The administrative hearing transcript and the ALJ's decision show the ALJ knew about Green's strong work history. Tr. 21, 23, 58–59. The ALJ even observed that Green continued working after she alleged numbness in her left foot when she stands too long and requested a work accommodation. Tr. 23. Green cites nothing that requires the ALJ to expressly discuss work history as a favorable factor in evaluating her statements. *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (rejecting claimant's argument that the ALJ should have accepted her testimony about her pain due to her good work history); *cf. Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (explaining ALJ's credibility determination need not "cite particular phrases or formulations").

Though Green's work history could have supported giving more credence to her statements, substantial evidence supports the ALJ's findings, including, as the ALJ explained, Green "required very conservative care without indication of any emergent services, hospitalizations or surgeries" and had "rather normal clinical findings." Tr. 23–24. The Court's role is to determine whether the ALJ was clearly wrong in failing to credit Green's testimony, not whether she could have credited it. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it.").

Remand to reconsider Green's work history is unwarranted.

## V.     Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Terry Lee Scott Green and **close** the file.

**Ordered** in Jacksonville, Florida, on September 30, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     Counsel of record